UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DARREN JAY DENNISON,

    Plaintiff,

v.

Lieutenant LANE, et al.,

    Defendants.

No. C 07-0778 PJH (PR)

**ORDER GRANTING/DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; STAY AND REFERRAL TO MEDIATION**

This is a civil rights case brought pro se by a state prisoner. The case proceeds on the amended complaint against Santa Clara Police Officers Lane, Buress, Leipelt, Schneider, Horn and Munoz, who were involved in plaintiff's 2007 arrest. Docket No. 25. Defendants have moved for summary judgment on the remaining three claims, as numbered in the complaint:

    I.  Buress, Horn, Munoz, Schneier, and Lane denied plaintiff's right to phone access;

    III. Buress, Horn and Munoz assaulted plaintiff in his cell and then placed him in restraints and later placed him in a police car to be tranported;[1] and

    IV. Buress, Horn, Munoz and Leipelt refused plaintiff's request for medical treatment;

Plaintiff has filed an opposition and defendants filed a reply.[2]

///

///

---

[1] The court has combined this claim with claim VI.

[2] The court will not consider state law claims raised for the first time in plaintiff's opposition to the motion for summary judgment, as these were not set forth in the operative amended complaint.

# DISCUSSION

## I. Motions for Summary Judgment

### A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

### B. Facts

The following facts are undisputed except where indicated otherwise.

On January 1, 2007, at approximately 3:04 pm, plaintiff was arrested for delaying a peace officer in the discharge of his duty, falsely identifying himself to a police officer and failing to register as a sex offender for which a U.S. Marshal's probation violation warrant was issued.[3] Decl. Leipelt ¶ 5-6. Plaintiff was then transported to the Santa Clara Police Station by Lepielt and Schneider at 3:20 pm and placed in a holding cell in the Temporary Holding Facility (THF) at the police station while the processing continued. *Id.* at ¶ 6-7. Leipelt discovered that plaintiff had prior arrests for prison escape, with and without force.

---

[3] It appears all the charges were dropped. Opposition at 12. Though plaintiff is in prison on another case.

2

*Id.* at ¶ 6.

Defendants state that plaintiff stood on top of a short wall in the cell and ran his hands along the edges of the light fixture on the ceiling. Decl. Horn ¶ 5. Horn motioned for plaintiff to get off the wall. *Id.* Plaintiff motioned with his hand that he wanted to use the telephone and shook his head to indicate he would not get off the wall. *Id.* Horn spoke into the THF's public address system and ordered plaintiff to get of the wall, but plaintiff refused, saying he would not get down until he was allowed a telephone call. *Id.* at ¶ 6. Horn told plaintiff he could have a phone call after he got off the wall, but plaintiff stated "this is all your fault." *Id.*

Plaintiff grabbed a roll of toilet paper and began wrapping the paper around his right hand and then began rolling the paper back and forth between his hands periodically spitting on the paper. *Id.* at ¶ 7. Plaintiff molded the paper into a spear like shape and placed it in on the wall next to him. *Id.* Plaintiff removed his socks, walked to the front window of the cell and stared directly at Horn, removed his t-shirt and began stretching. *Id.* at ¶ 8. Plaintiff put the socks on his fists and began violently punching the light fixture in the holding cell. *Id.* As Horn was concerned that if plaintiff destroyed the light fixture he would have access to metal, plastic or glass as a weapon, he radioed Buress for assistance. *Id.* at ¶ 9. Buress arrived and plaintiff began challenging Buress and Horn to fight. Decl. Buress ¶ 5.

Buress told Munoz to retrieve the shackles and Munoz complied. *Id.* Buress wanted to be able to secure plaintiff's arms and prevent him from attacking any officers or destroying property. *Id.* Horn and Buress entered the cell with the intent to handcuff plaintiff's hand and feet. Decl. Horn ¶ 10. Buress told plaintiff to turn around face away from the door, but plaintiff refused to turn around and raised his hands and assumed a fighting stance. Decl. Buress ¶ 7; Decl. Horn ¶ 11. Buress told plaintiff to turn around, but plaintiff said he wanted to make a phone call. Decl. Buress ¶ 7; Decl. Horn ¶ 10. Buress told plaintiff he could make a call, but he needed to obey instructions. Decl. Horn ¶ 10.
///

The parties continued to exchange words about a phone call, but as Buress was convinced plaintiff was preparing to attack them, Buress grabbed plaintiff and used a leg sweep to bring plaintiff to the ground, and he violently struggled to break free. Decl. Horn ¶ 11. Horn and Buress attempted to subdue plaintiff who attempted to strike defendants repeatedly. Decl. Buress ¶ 8; Decl. Horn ¶ 11-12. In the process of subduing plaintiff, Buress punched plaintiff twice on the right arm and three to four times on his right side before eventually being able to handcuff plaintiff. Decl. Buress ¶ 10. Leg restraints were also put on plaintiff until a body restraint device was placed on him, including a spit hood. Decl. Buress ¶ 11; Decl. Horn ¶ 11-13. Plaintiff was then carried to Leipelt's patrol car, placed in the back seat and transported to the county jail by Leipelt and Schneider while still in the body restraint device. Decl. Horn ¶ 14. This occurred at around 6:20 pm. Decl. Leipelt ¶ 9. Pictures were taken of plaintiff to document any alleged injuries upon arrival at the county jail. Decl. Buress ¶ 12; Decl. Hill, Ex. A.

Plaintiff agrees that he was transported to the police station and placed in a holding cell while he was processed. Opposition at 8. Plaintiff disputes the events that occurred next. Plaintiff states he noticed a sign about making a telephone call and requested to make a call, but his requests were denied. *Id.* Plaintiff denied that he tried to break the light fixture or make any type of weapon out of toilet paper. *Id.* at 9. Plaintiff states that Buress and Horn came into the cell to assault him because he asked to use the telephone. *Id.* Munoz just stood in the doorway. *Id.* Plaintiff put up his hands in defense and states that Buress wrapped his arms around plaintiff and took him to the ground and then began to punch plaintiff about the head, chest, stomach and shoulders. *Id.* at 10. Plaintiff states he told these officers he needed to go to the hospital, but they took him to the county jail instead. *Id.* at 11. Plaintiff was evaluated by nurses at the county jail. Am. Compl. at 21.

**C.    Analysis**

    **Excessive Force**

The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). And "the

Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). A plaintiffs' claim of excessive force must be evaluated under the Fourth Amendment's objective reasonableness standard. *See Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1043 (9th Cir.1996); *Lolli v. County of Orange*, 351 F.3d 410, 415–17 (9th Cir. 2003) (applying Fourth Amendment standards for excessive force claim brought by a pre-arraignment detainee); *Gibson*, 290 F.3d at 1197. In making this determination, the court balances "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415. This means that a court must "balance the [type and] amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003).

    The following factors are relevant when evaluating the need for force: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is resisting arrest or trying to evade arrest by flight. *Graham*, 490 U.S. at 396–97. Another relevant consideration is that just because force later appears unnecessary does not mean that it is unreasonable force barred by the Fourth Amendment. The reasonableness is judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *See id*. Officers often make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.[4]

    In this case, material facts remain in dispute regarding Buress and Horn and it is decisive for the outcome of the case whether plaintiff's version of the facts is correct or defendants' version is accurate. If Buress and Horn repeatedly punched plaintiff about the face, head and body while on the ground and restrained plaintiff in a full restraint device, simply because he requested to use the phone, then a jury could find that these actions

---

[4] Plaintiff's Eighth Amendment argument will not be addressed as the Eighth Amendment is not the proper standard as discussed above.

5

violated the Fourth Amendment. If plaintiff was destroying property, making weapons and refusing to comply with the defendants' commands then the amount of force and restraint device could be justified. The court notes that pictures taken of plaintiff immediately after the incident only show minor bruises, scrapes and red marks. Decl. Hill, Ex. A. However, minor injuries will not defeat an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 130 S. Ct. 1175, 1178–79 (2010) (inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury). It also appears that plaintiff may have suffered a fractured toe.

In their reply, defendants request the court to disregard plaintiff's statement of facts as it is self-serving and uncorroborated. Reply at 3. While plaintiff's statement at times pushes the bounds of credibility, it is not entirely incredible and he has submitted a signed declaration which the court must credit. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). The court also denies defendants' objections to plaintiff's statement of facts. Docket No. 86. The court notes that this case is similar to *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003). *Lolli* also concerned a Fourth Amendment excessive force case brought by a pre-arraignment detainee where there were differing accounts of the incident. The district court granted summary judgment in favor of defendants and the Ninth Circuit reversed noting that genuine issues of material fact existed which precluded summary judgment. *Id.* at 412. The Ninth Circuit noted the discrepancies between the accounts of the parties and that one side's, "version of the story, unsurprisingly, is very different." *Id.* Looking at the evidence in the light most favorable to plaintiff, the Ninth Circuit concluded that he had met his burden in opposing summary judgment. *Id.* at 417  Similarly, in looking at plaintiff's evidence in this case, he has met his burden and a jury could conclude that the intrusion on his Fourth Amendment interests was substantial.

While summary judgment is being denied for Buress and Horn, it will be granted for Munoz. It is undisputed that Munoz's only involvement was being near the holding cell when the incident occurred and giving the other defendants restraints. Plaintiff makes no

6

allegations that Munoz ever harmed him. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff has failed to show that Munoz committed any act against him. Nor has plaintiff alleged that Munoz failed to intervene. Even if plaintiff had raised that allegation, summary judgment would still be granted for Munoz.

In order to state an excessive force claim against correctional officer-bystanders, a plaintiff must allege circumstances demonstrating that these officers had an opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). By all accounts, this incident happened very quickly in a small holding cell, so there would not have been time or space for Munoz to intervene.

**Phone Access**

California grants arrestees (persons detained in custody post-arrest, but pre-arraignment) the right to place three telephone calls. *See* Cal Penal Code § 851.5. This state-created right is one of "real substance" entitled to constitutional due process protections. *See Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997). An arrestee therefore must receive notice of the right to telephone calls and be denied a requested immediate telephone call only in the case of physical impossibility. *See id.* at 497.

In the complaint, plaintiff listed five of the defendants and generally stated they did not allow him to make a telephone call. The disputed and undisputed facts regarding the denial of phone access involve Buress and Horn. Plaintiff makes no reference to Schneider and only the briefest mention of Munoz and Lane. Plaintiff allegedly asked Munoz and Lane once to use the phone but they said no. Additional Opposition (Docket No. 102) at 8. The undisputed facts also indicate that Lane and Munoz had very little to do

with this case and appeared to simply be in the area. Summary judgment will be granted to Schneider, Munoz and Lane as the nonexistent or bare evidence against these defendants with respect to these claims is insufficient to overcome summary judgment. Forty-two U.S.C. § 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff has failed to describe when these defendants refused a phone call, the circumstances of the denial and even if they were present for the duration of his time at the police station or just briefly when they denied the phone call. This is insufficient to oppose a motion for summary judgment. Plaintiff has failed to make a showing sufficient to establish the existence of an element essential with respect to these defendants.

However, both the undisputed and disputed facts demonstrate that Buress and Horn were central to the denial of a phone access claim. California Penal Code § 851.5(a)(1) states, "[i]mmediately upon being booked and, except where physically impossible, no later than three hours after arrest, an arrested person has the right to make at least three completed telephone calls, as described in subdivision (b)." It is undisputed that plaintiff was at the police station for approximately three hours and not allowed to make a phone call. Plaintiff was then taken to the county jail, but no evidence has been presented concerning when or if plaintiff was allowed to make a phone call at the county jail.

The statute does state a call should be provided, "except where physically impossible." *Id.* Defendants argue it was not physically possible due to plaintiff's combative behavior and that he had to be restrained. If the facts are as defendants describe, then they would most likely not be liable. If the facts are as plaintiff describes, in that he repeatedly requested a call and was then assaulted, restrained and denied phone access, then a jury could find plaintiff is entitled to relief. As with the excessive force claim, material facts remain in dispute that are decisive for the outcome of this claim and require a trial.

///

Defendants also cite to several Ninth Circuit cases and argue they should be allowed more flexibility to honor the right to a phone call.  However, these cases, *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) and *Gallagher v. City of Winlock*, 287 Fed. Appx. 568 (9th Cir. 2008), arose from actions in Montana and Washington and described the general right for detainees to communicate with the outside world.  In this case, plaintiff has specifically identified California Penal Code § 851.5(a)(1) and the constitutional due process protections associated with that statute found in *Carlo.*  Therefore, summary judgment is granted to Schneider, Munoz and Lane but denied for Buress and Horn.

**Medical Care**

"Although the Fourth Amendment provides the proper framework for [plaintiff's] excessive force claim, *see Pierce*, 76 F.3d at 1043, it does not govern his medical needs claim.  Claims of failure to provide care for serious medical needs, when brought by a [pre-arraignment] detainee such as [plaintiff] who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment.  *See Gibson*, 290 F.3d at 1187." *Lolli*, 351 F.3d at 418-19.

The Ninth Circuit Court of Appeals has made clear that "the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010); *see also Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, we apply the same standards in both cases.") (internal citations omitted).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."

*McGuckin*, 974 F.2d at 1059 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's medical claims are difficult to discern. He states that Buress, Horn, Leipelt and Munoz refused plaintiff's request for medical treatment and to take him to a hospital after being assaulted. His opposition to summary judgment provides no more information regarding his medical claims. It is not clear the type of medical care plaintiff requested or required and how any defendants were deliberately indifferent by not taking him to the hospital. Simply stating he needed medical care that was denied, is insufficient. While plaintiff has included medical exhibits with his opposition he has not presented any arguments or allegations related to these exhibits.

It is undisputed that plaintiff was evaluated by nurses after arriving at the county jail, and this was only one or perhaps two hours after he suffered his injuries. After reviewing plaintiff's exhibits, it is clear he received sufficient medical treatment. In fact, according to plaintiff's exhibits he was taken to Santa Clara Valley Medical Center later that same day of the incident, January 1, 2007. Opposition at 23. It appears, though the handwriting is not clear, that plaintiff was seen at 23:52 or 11:52 pm, by doctors. *Id.* Plaintiff was also treated at the Santa Clara Valley Medical Canter on January 2, and January 4, 2007. *Id.* at 23-24. Thus, at the most plaintiff is alleging that his medical treatment was delayed for several hours, though plaintiff has provided no evidence or even allegations concerning how this delay was deliberately indifferent to any serious medical needs. Mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Summary judgment is therefore granted as to all defendants with respect to plaintiff's medical claims.

///

**D.     Qualified Immunity**

Because summary judgment must be denied for Buress and Horn regarding the excessive force and phone access claims, the court will address the qualified immunity argument.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong of test before addressing second prong).  The court may exercise its discretion in deciding which prong to address first. *Id.*

Plaintiff has adequately alleged a violation of a clearly established constitutional right, in that a reasonable person in defendants' positions would not have believed that it was lawful to force to the ground, punch many times and fully restrain plaintiff for simply requesting to make a phone call. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (finding no qualified immunity where law was clearly established at time of defendant's arrest that arresting officers' conduct in punching, gang tackling, and using hobble restraints to take defendant into custody could have been unconstitutional).

The denial of phone access also alleges a deprivation of a constitutional right, and in light of *Carlo*, no reasonable officer could have believed that denying plaintiff his phone calls for simply asking, did not violate his constitutional rights.  Moreover, the Ninth Circuit denied the defendant's qualified immunity argument in *Carlo* in 1997. *Carlo*, 105 F.3d at 502.  The defendants are not entitled to qualified immunity.

///

11

**II.      Further Proceedings**

Having denied in part, defendants' motion, this case is referred to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Mediation Program. Judge Vadas shall conduct mediation proceedings and file a report thereafter. The proceedings are confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. In view of the referral, further proceedings in this case are stayed. If the case is not settled, the court will enter a new scheduling order for further proceedings.

## CONCLUSION

1. The motion for summary judgment (Docket No. 62) is **GRANTED/DENIED IN PART** in that defendants Lane, Leipelt, Schneider and Munoz are dismissed entirely from this action. All claims related to plaintiff's medical care are denied. This case continues against Buress and Horn on the excessive force and denial of phone claims.

2. This case is referred to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Mediation Program. Judge Vadas shall conduct mediation proceedings and file a report thereafter. In view of the referral, further proceedings in this case are **STAYED**. The clerk shall mail a copy of this order to Magistrate Judge Vadas in Eureka, California.

**IT IS SO ORDERED.**

Dated: February 4, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.07\Dennison0778.SJ.wpd